# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

STACY DUDARK, )
)
    Plaintiff, )
)
v. ) Case No. CIV-13-401-M
)
SOUTHWESTERN MEDICAL CENTER, )
LLC, and CAPELLA HEALTHCARE, )
INC., )
)
    Defendants. )

## ORDER

Before the Court is Southwestern Medical Center ("SWMC") and Capella Healthcare, Inc.'s ("Capella") (collectively, "defendants") Motion for Summary Judgment, filed on March 3, 2014. On March 24, 2014, plaintiff filed her response; on March 31, 2014, defendants filed their reply, and on April 14, 2014, plaintiff filed her surreply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction

During the relevant time period, plaintiff, a Caucasian, served as a full time therapist in the role of supervisor at SWMC's Children's Unit. In October 2011, plaintiff approached her direct supervisor LeAnn Corbett ("Corbett"), a Caucasian, regarding a pay issue. Plaintiff alleged that she was being paid at a similar rate as two other less experienced African-American full time therapists, Lisa Thomas ("Thomas") and Sharon Rogers ("Rogers"). Plaintiff alleged that the similarly pay rate is either due to defendants applying the incorrect pay band or that it was a race issue. Subsequently, at some point, Corbett approached her supervisor, Lanya Doyle, an African-American, regarding

plaintiff's complaint about her pay rate. In November 2011, plaintiff received a warning letter.[1] Subsequently, plaintiff wrote a letter to the Human Resources Director, Danny Hale ("Hale"), contesting this issue, and on November 23, 2011, met with Doyle and Hale to address these issues.

In February 2012, plaintiff reported to Corbett an alleged HIPPA violation against Doyle for improperly accessing an employee's medical records. On February 12, 2012, plaintiff sent a letter to CEO Stephen Hyde ("Hyde"), reporting her allegations of discrimination and retaliation and the alleged HIPPA violation. On or about February 22, 2012, Hyde met with plaintiff and Hale and discussed the allegations in plaintiff's February 12, 2012 letter and plaintiff's plan to go part time to open her private practice. On or about February 29, 2012, plaintiff met with Corbett and Doyle. During this meeting, Corbett and Doyle allegedly informed plaintiff that she could go part time starting April 1, 2012 only until her replacement was hired. On the same day, plaintiff emailed Hale and Hyde expressing her concern. On March 12, 2012, plaintiff reported the alleged HIPAA violation to the Oklahoma Department of Health and Human Services.[2] On March 15, 2012, plaintiff met with Corbett and Hale who informed her that she could not go part time as previously stated. In response, plaintiff informed Corbett that she would simply stay on as full time. Plaintiff left the meeting and faxed an Intake Questionnaire to the EEOC from the Children's Unit fax machine. Subsequently, the parties continued the meeting and Corbett informed plaintiff that she could go part time as scheduled until her replacement was hired.

On April 1, 2012, plaintiff's status changed to part time. After she went part time, plaintiff was excluded from leadership meetings and her hourly pay was reduced from $34.02 an hour to $32.20 an hour. In July 2012, SWMC hired Cammy Harriston, a Caucasian. On July 27, 2012,

---

[1] The warning, signed by Corbett, provided that plaintiff is receiving this warning because some unidentified employees complained that (1) plaintiff was making unfair patient assignments and was not carrying the same load as her subordinates, (2) plaintiff was not being available for guidance to her subordinates, and (3) her subordinates feel abuse and neglect by plaintiff.

[2] Ultimately, the department found no HIPPA violation occurred.

plaintiff was terminated from her part time position. Subsequently, plaintiff filed a Charge of Discrimination with the EEOC alleging race and age discrimination and retaliation.

II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. Discussion[3]

A. Breach of Contract

An employment contract for indefinite duration is terminable at will by either party. *See Hayes v. Eateries, Inc.*, 905 P.2d 778, 781 (Okla. 1995) (citation omitted). "[A]n employer may discharge an [at-will] employee for good cause, for no cause or even for cause morally wrong, without being thereby guilty of legal wrong." *Id.* (internal quotation marks and citation omitted).

---

[3] On March 24, 2014, plaintiff stipulated to the dismissal of her age discrimination claim.

However, an employer, through a contract, may restrict the grounds on which an at-will employee may be discharged. *See id.* "In order to have a valid contract there must be mutual consent, or a meeting of the minds." *Beck v. Reynolds*, 903 P.2d 317, 319 (Okla. 1995) (citations omitted). "The consent of the parties must be mutual, and consent is not mutual unless the parties all agree upon the same thing in the same [sense]." *Id.* (internal quotation and citation omitted).

Defendants contend that plaintiff's breach of contract claim fails as a matter of law because SWMC's Employee Handbook and her employment application states that plaintiff's employment is at-will and can only be altered by a written agreement. Plaintiff concedes there is no written agreement altering her status. However, plaintiff asserts she has a valid contract claim because: (1) her employment application and the employee handbook are out-dated irrelevant materials, predating Capella, the parent company, and (2) the alleged contents of her conversation with Hyde and Hale on February 22, 2012 created an oral contract to allow her to work part time indefinitely.

Having carefully reviewed the parties' submissions, the Court finds that plaintiff's breach of contract claim fails as a matter of law. Specifically, the Court finds that plaintiff has provided no authority supporting her assertion that because her employer SWMC, a subsidiary, was subsequently purchased by a different parent company, Capella, that it somehow renders her then existing terms of employment non-binding and "out-dated irrelevant materials". Thus, the Court finds that plaintiff is an at-will employee and, based on the original terms of her employment, her status could only be altered pursuant to a written agreement. Second, the Court finds that the alleged contents of the February 22, 2012 conversation was not sufficient to create an enforceable contract. Here, plaintiff alleges that Hyde told her she could work part-time "until *as long as I wanted*." Docket No. 29, Ex. 1, Dudark Dep. at 228:18 (emphasis added). This is contrary to her employer's written expression of its intention not to alter her status without a written agreement. Further, this alleged conversation did not create an oral contract because plaintiff's own admissions

show that this alleged statement is vague and shows a lack mutual assent as to essential terms of employment. For example, plaintiff acknowledges there might be some limitations on her term of employment leading to her termination, such as if she engaged in inappropriate activity or if it did not make business sense that she would not be kept. This is in direct contradiction to her assertions that there was an agreement for her to work part time as long as she wanted. Because the alleged agreement lacked the predicate meeting of the minds and contains vague indefinite terms, the Court finds there was no formation of an oral contract and, thus, plaintiff's breach of contract claim fails as a matter of law. Accordingly, the Court grants summary judgment as to this claim.

B. Title VII Race and Retaliation

1. Reverse Race Discrimination[4]

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation,

---

[4] Defendants assert plaintiff failed to exhaust her administrative remedies against Capella, the parent company, because the EEOC complaint does not mention Capella. "[O]mission of a party's name from the EEOC charge does not automatically mandate dismissal of a subsequent action under Title VII." *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980). Where such omission occurs, the Court considers:
> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* (citation omitted). Here, the Court finds that plaintiff has provided evidence showing Capella and SWMC had sufficient identity of interest and Capella had actual notice, including once plaintiff filed the EEOC charge, Capella communicated with the EEOC and responded on behalf of SWMC, Capella responded to plaintiff's EEOC charge, plaintiff's pay and benefit information comes from Capella, and plaintiff's change of status notice came from Capella. Under these circumstances, the Court finds that there was sufficient identity between the SWMC and Capella, Capella had sufficient notice of the charge, and Capella has not alleged any prejudice as a result of the omission.

terms, conditions, or privileges of employment because of such individual's race . . . " 42 U.S.C. § 20003-2(a)(1).

> Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973), the plaintiff bears the initial burden of establishing a prima facie case of [race] discrimination, whereupon the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge, and then back to the plaintiff to show that the stated reason is pretextual. To establish a prima facie case, a plaintiff ordinarily must show "that (1) the plaintiff belongs to some protected class, (2) the plaintiff was qualified for the position or benefit at issue, (3) the plaintiff suffered an adverse employment action, and (4) the plaintiff was treated less favorably than others (e.g., the position at issue remained open after the adverse employment action)." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004). The Supreme Court has held that such a prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on consideration of impermissible factors." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577, (1978). For most plaintiffs, establishing a prima facie case is perfunctory, and liability turns on whether the defendant's stated explanation for the adverse employment action is pretextual.
> 
> In a reverse discrimination case, however, a prima facie case of discrimination requires a stronger showing. We have held that a plaintiff alleging reverse discrimination "must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992). Alternatively, a plaintiff may produce facts "sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred." *Id.* at 590.

*Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

In the case at bar, it appears that plaintiff is proceeding under the "but for"[5] standard. *See* Pl.'s Resp. to Defs.' P. Mot. for Summ. J., at 22 ("Although Defendants mention the 'background circumstances' modification, Dudark can alternatively present evidence supporting 'a . . .but for her

---

[5] The Tenth Circuit has further explained:
> We emphasize that a plaintiff who attempts to state a prima facie case in this fashion is not entitled to rely on the presumption that is implicit in the *McDonnell Douglas* prima facie case analysis. In other words, it is not enough, under this alternative formulation, for a plaintiff merely to allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision. Instead, the plaintiff must allege and produce evidence to support specific facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.

*Notari*, 971 F.2d at 590.

race'. . . . Dudark can establish this element."). After sorting through plaintiff's extensive factual allegations carefully and viewing the record in the light most favorable to plaintiff, the Court finds that plaintiff has produced sufficient evidence to reasonably infer that but for plaintiff's status the challenged decision would not have occurred. Essentially, plaintiff relies on to the written warning she received in 2011, the lack of discipline for alleged misconduct by other African-American employees, defendants' refusal to create a part time employment opportunity for plaintiff while allowing the same to an African-American therapist, her reduction in pay, and other complaints of racial discrimination by Doyle towards four former employees and other non-disclosed parties. Further, although Corbett was plaintiff's supervisor, plaintiff alleges that all the actions that were taken against her were the result of or through the decisions of Doyle, an African-American. Viewing the record in the light most favorable to plaintiff, the Court finds that it does appear that Doyle was involved in some capacity during some of the discussions regarding some of the challenged decisions, including the interviewing of some of the individuals who made the allegations that resulted in a written warning against plaintiff and the process/decision on whether or not to allow plaintiff to go part time, in what capacity, and plaintiff's ultimate termination. Further, plaintiff has produced evidence from which a reasonable inference can be made that defendants may have treated African-American employees differently, especially with regards to disciplinary actions. While defendants contest the credibility and the accuracy of such evidence and provide legitimate arguments of their own, and the Court takes no position on the merits of plaintiff's allegations, the Court finds that plaintiff has provided sufficient evidence to support a reasonable inference that but for plaintiff's status the challenged decisions would not have occurred.

In addition, even though defendants have proffered legitimate non-discriminatory reasons for the alleged actions, the Court finds that viewing the evidence in light favorable to the plaintiff, there are disputes of material facts on the issue of pretext that precludes a finding as a matter of law.

7

Pretext "requires a showing that the tendered reason for the employment decision was not the genuine motivating reason, but rather was a disingenuous or sham reason." *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir. 1998) (citation omitted). The "relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004). To that end, the Tenth Circuit has stated that:

> [a] plaintiff produces sufficient evidence of pretext when [he or] she shows such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. When evaluating the sufficiency [of] this evidence, we look to several factors, including the strength of the employee's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for summary judgment.

*Jones v. Okla. City Pub. Sch.,* 617 F.3d 1273, 1281 (10th Cir. 2010) (internal citations and quotations omitted).

Defendants, asserting that only her reduction in pay and termination qualifies as an adverse action, contend that plaintiff suffered a reduction in pay because she chose to go part time and she was terminated when they found a full time replacement – Cammy Harriston – a Caucasian who was eventually paid at a higher rate. However, a careful review of the record shows that there are some material factual disputes on the issue of pretext. For example, Hale testified that the reason plaintiff was told she could not work part time was because census was generally low during the summer period. Yet, after plaintiff left the meeting, she was told to rejoin the meeting and informed she could continue to work part time until they found a replacement for her and was eventually allowed to work throughout the summer – during the alleged low census period. Additionally, regarding reduction in pay, Doyle testifies that it was because plaintiff was no longer a supervisor, but Hale testifies that it was because of the adjusted pay scale from 2010, a new salary band.

8

Plaintiff counters with her own evidence showing why defendants' statements are inconsistent and not credible. Thus, after carefully reviewing the extensive record, the Court finds that there are disputes of material facts on the issue of pretext that precludes a finding as a matter of law.

2. Retaliation Claim

"Title VII forbids retaliation against an employee because she has 'opposed' any practice made unlawful by Title VII, or because she has 'participated . . . in an investigation, proceeding, or hearing under this subchapter.'" *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (quoting 42 U.S.C. § 2000e–3(a)). It appears defendants are contesting plaintiff's ability to show pretext. *See* Defs. Reply Supp. Mot. Summ. J., at 2-3, fn.1 ("[o]f course, retaliation under Title VII requires the same elements as her . . . race . . . claims, namely, that she prove Defendants' legitimate non-discriminatory reasons are pretextual."). As set forth above, the Court finds there are disputes of material fact on the issue of pretext that precludes a finding as a matter of law. Accordingly, the Court denies defendants' motion for summary judgment on plaintiff's retaliation claim.

C. Whistleblower Act

The Oklahoma Supreme Court "recognize[s] a cause of action for wrongful discharge in violation of public policy, creating an exception to its general rule of at-will employment." *Wilburn v. Mid–South Health Dev't, Inc.*, 343 F.3d 1274, 1277 (10th Cir. 2003) (citing *Burk v. K–Mart*, 770 P.2d 24 (Okla. 1989)). This cause of action is "tightly circumscribed and is available only when an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." *Id.* (internal quotation marks and citation omitted).

Plaintiff's whistleblower claim is based on HIPPA, Okla. Stat. tit. 63, § 1-502.2 *et seq.* Defendants assert that just as in her race claim, plaintiff's whistleblower claim fails as none of the alleged retaliatory acts were taken by Doyle and each of them was supported by legitimate business

reasons. However, as noted above, there are genuine disputes of material facts as to whether defendants actually retaliated against plaintiff and the extent and nature of Doyle's alleged involvement regarding the alleged retaliatory acts against plaintiff. Plaintiff has provided even more evidence supporting her claim that she was retaliated against for reporting a HIPPA violation. Thus, because there are genuine disputes of material fact on this issue, the Court denies defendants' motion for summary judgment on plaintiff's whistleblower claim.

IV. Conclusion

Accordingly, the Court GRANTS IN PART and DENIES IN PART defendants' Motion for Summary Judgment [docket no. 29] as follows:

1. The Court GRANTS defendants' motion as to plaintiff's breach of contract claim, and
2. The Court DENIES defendants' motion as to plaintiff's race discrimination, race retaliation, and whistleblower Claims.

**IT IS SO ORDERED this ___1st___ day of May, 2014.**

*Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE